**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Sabrina Alberg

     v.                        Case No. 17-cv-79-AJ
                                   Opinion No. 2018 DNH 232

Foss Motors, Inc.

**MEMORANDUM ORDER**

Sabrina Alberg alleges that her former employer, Foss Motors, Inc., subjected her to a hostile work environment in violation of federal and state employment law.  The parties consented to the jurisdiction of the undersigned magistrate judge (doc. no. 9), and Foss Motors moved for summary judgment (doc. no. 18).  The court held a hearing on September 21, 2018, and at that time indicated that it would deny Foss Motors' motion.  This order provides the specific bases for that ruling. See, e.g., United States v. Joubert, 980 F. Supp. 2d 53, 55 n.1 (D.N.H. 2014), aff'd, 778 F.3d 247 (1st Cir. 2015) (citing In re Mosley, 494 F.3d 1320, 1328 (11th Cir. 2007)) (noting a district court's authority to later reduce its prior oral findings and rulings to writing).

In short, this case must go to a jury because there are genuine disputes in the record whether Alberg faced harassment at Foss Motors so severe or pervasive that it altered the conditions of her employment, whether Foss Motors implemented

prompt and appropriate action in response to that harassment, and whether Alberg was constructively discharged.

## I.   **LEGAL STANDARD**

At the summary-judgment stage, the court "view[s] the facts in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in the nonmovant's favor . . . ." Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 312 (1st Cir. 2016) (citation and quotation marks omitted). The court may only grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the initial burden of "identify[ing] for the district court the portions of the record that show the absence of any genuine issue of material fact." Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016).  If the movant does so, "the burden shifts to the nonmoving party, who must, with respect to each issue on which [s]he would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [her] favor." Id. (citation omitted).

## II.   **BACKGROUND**

The facts, when viewed in the light most favorable to Alberg, are as follows.[1]  Foss Motors is an automotive sales and service facility with approximately 40 to 50 employees.  Doc. no. 18-3 at 5.  Larry Foss owns and manages Foss Motors, id. at 5-6, and David Andonian serves as general manager, doc. no. 18-4 at 5.  From October 1, 2015, to June 9, 2016, Alberg worked for Foss Motors as a service writer.  Doc. no. 19 at 16, 21, 26, 109.  Alberg's schedule called for her to work approximately 45 hours per week, plus certain Saturdays.  Id. at 33-34.  She reported to Dave Barry, Foss Motors' service manager.  Id. at 21.

### A.   **Comments**

During her tenure, Alberg received unwelcomed comments from other Foss Motors employees.  Keith Richardson, a diesel technician, made many of these comments.  On Alberg's first Saturday, Richardson commented on how "hot" or "sexy" she looked

---

[1] The following narrative is based in large part on Alberg's deposition testimony.  Several other individuals involved in the relevant events have provided materially different testimony. At this stage, however, the court must credit Alberg's deposition to the extent it is based on her personal knowledge and material to the outcome.  See Velazquez-Garcia v. Horizon Lines of P.R., Inc., 473 F.3d 11, 18 (1st Cir. 2007).  Indeed, accepting contrary testimony would require the type of weight and credibility judgments the court may not make at the summary-judgment stage.  See Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014).

and stated that he would like to "throw [her] up on his desk."
Id. at 99; 106; doc. no. 18-6 at 2.  On a different occasion,
Richardson grabbed a receipt that Alberg had taken out of her
pocketbook and told Alberg that he was making sure she was not
on welfare and "wasn't one of those moms."  Doc. no. 19 at 98-
99.  Richardson further stated he was "pretty sure [he knew] why
[Alberg's] husband left [her] to begin with."  Id. at 98-99.
Richardson commented about Alberg's ex-husband on other
occasions, including wondering aloud whether her ex-husband
"traded [her] in for some hot blonde."  Id. at 108.

Richardson's comments made Alberg feel degraded and
belittled, particularly as a single mother.  Id. at 99-100.  On
at least one occasion she reported the comments to Andonian.
Id.  Alberg specifically asked Andonian whether she was expected
to work in an environment where she felt that people did not
view her as a person.  Id. at 100.  Andonian responded that it
was just "[Richardson] being [Richardson]," that it was part of
Richardson's attitude, and that Richardson did not mean anything
by it.  Id. at 99-100.  Alberg also raised Richardson's conduct
with Barry "multiple times," offering to quit after Richardson's
comment about the receipt because it made her "feel like crap."
Id. at 107-09.  There is no indication in the record that
Andonian, Barry, or anyone else ever addressed the comments with
Richardson.

4

Alberg was also the target of a comment by a Foss Motors employee identified in the record only as "Wayne."  On Tuesday, June 7, 2016, Foss called Alberg and requested that someone remove a Siemens Electric truck from the truck bay so that Foss could park his motor home.  Id. at 51.  Alberg relayed this request to Wayne, who responded by offering to "give [Alberg] some semen in [her] mouth."  Id. at 51-52.  Alberg reported Wayne's comment to Barry and Andonian, stating that "enough is enough" and that she did not need "13-year[-]old comments of what [Wayne] wants to do because it was a Siemens Electric truck."  Id. at 52.  Barry responded, "Ah it's Wayne, you know. I'll talk to him.  It's Wayne."  Id.  Andonian said nothing. Id.  It is unclear from the record whether any Foss Motors employee ever address this comment with Wayne.[2]

**B.   June 8 and 9, 2016**

In June 2016, Richardson twice slapped Alberg on the butt. The first slap occurred on June 8, when Alberg was speaking with a customer at her desk.  Id. at 56-59.  Alberg told Richardson not to put his hands on her.  Id. at 57, 59, 63.  Richardson laughed and walked away.  Id. at 59, 62, 63.  Alberg's face

---

[2] Alberg contends that she was the target of other similar comments, as well as whistling and catcalling, but does not provide specifics with respect to those incidents.  Doc. no. 18-6 at 2.  There is no indication in the record that she ever mentioned these other incidents to her coworkers or reported them to her superiors.

turned red and her eyes welled up. Id. at 57. Once Alberg finished with the customer, Foss Motors' parts manager, Brian Dion, approached her. Id. at 60-61; doc. no. 18-5 at 9-10. Alberg told Dion what Richardson had done, and Dion brought her to Andonian's office. Doc. no. 19 at 61; doc. no. 18-3 at 9-15.

With Dion present, Alberg reported Richardson's conduct to Andonian. Doc. no. 19 at 61-62; doc. no. 18-5 at 13. Alberg was upset and indicated that, while she had tolerated some of the previous comments, physical contact crossed a line. Doc. no. 19 at 61-63. Though Andonian apologized and noted that there had been issues with Richardson in the past, he also indicated that Richardson was Foss Motors' only diesel mechanic and made the company a lot of money. Id. at 64-65. Andonian noted that Richardson would be on vacation the following week. Id. at 65. After speaking with Andonian, Alberg returned to work, id. at 67, and Andonian reported to Foss what had happened, doc. no. 18-3 at 11. Foss scheduled a meeting with Andonian and Alberg for the following morning. Id. at 11-12.

Alberg met with Foss and Andonian the next morning as scheduled. Doc. no. 19 at 68. At that meeting, Andonian stated that his first thought was to let Richardson go. Id. at 68-69. Andonian again mentioned that Richardson generated a lot of business for Foss Motors but suggested that this meant Richardson should be held to a higher standard. Id. Foss

6

suggested that the technicians were a "good old boys' club" that he should have addressed a long time ago, but at the same time mentioned that Richardson made Foss Motors a lot of money. Id. at 69. Foss noted that Richardson was on vacation the following week and suggested that it "should help" to let time pass, but also noted that Richardson would "drinking all week" with his "biker buddies," which Foss thought might make his conduct worse. Id. at 69-70. Foss ultimately indicated that he would speak with Richardson and "go from there." Id. at 70. He also suggested that it might be time to bring somebody in to provide sexual-harassment training. Id. at 70-71. Alberg testified at her deposition that she never told Andonian or Foss not to discipline or fire Richardson, but that she could not recall whether she requested that he be fired. Id. at 70.

Foss and Andonian met with Richardson after meeting with Alberg. Id. at 71. According to Foss and Andonian, they reprimanded Richardson and told him that they would deal with his conduct after his vacation. See doc. no. 18-3 at 14-15, 21-23; doc. no. 18-4 at 14-15. There is no evidence in the record that Richardson received any other punishment, and Foss testified that he did not conduct any additional investigation. Doc. no. 18-3 at 21. Neither Foss nor Andonian ever informed Alberg what was discussed at that meeting. Doc. no. 19 at 71.

7

Alberg observed Richardson return to work once the meeting ended.  Id.[3]

Later that same day, Richardson slapped Alberg on the butt again, this time so hard it stung.  Id. at 71.  Alberg went to Andonian's office, told him what had happened, and indicated that Foss Motors might not be the right place for her to work. Id.  Andonian responded that he wanted to speak with Richardson. Id.  Alberg returned to her desk, and Andonian called Richardson into his office.  Id.  After speaking with Andonian, Richardson went back to work.  Id.  As he passed Alberg's desk, Richardson shook his head and made a noise.  Id. at 76.  Though she did not know what Andonian and Richardson had discussed, it was clear to Alberg that Richardson had not been fired.  Id. at 76, 79-80.

Alberg immediately grabbed her pocketbook and went to Andonian's office.  Id. at 71-72, 76.  On her way, she encountered Wayne, who invited her down to his bay in the garage and promised he would not slap her butt.  Id. at 76.  Once she got to Andonian's office, Alberg noted that Richardson had hit

---

[3] The record is ambiguous as to when this meeting occurred. Alberg testified that Richardson met with Foss and Andonian on the morning of June 9 and then met with Andonian again after the second slap later that day.  See infra pp. 8, 17-18.  Foss and Andonian both testified that only one meeting occurred, but disagreed whether it happened after the first or second slap. Compare doc. no. 18-3 at 15-16 with doc. no. 18-4 at 15-16.  The court adopts Alberg's version for the purposes of this narrative, but notes this discrepancy because it arises again in the discussion below.

her two days in a row and asked Andonian how she was supposed to feel comfortable working at Foss Motors under the circumstances. Id. at 71-72. Andonian responded that maybe Alberg "should take the day and think about it." Id. Upset, Alberg replied, "I should think about it? I didn't do anything. He hit me two days in a row. I asked him not to. And it was two days in a row. And I should think about it?" Id. Alberg left Foss Motors and did not return the following day. Id. at 80.

**C. Aftermath**

Alberg's last day at Foss Motors was June 9, 2016. Id. at 16. Foss left Alberg a voicemail after she left, and then emailed her on June 10 asking whether she had received the voicemail and suggesting that they meet the following Monday. Id. at 80-81. Alberg did not respond to Foss's call or email. Id.

Barry, who was out on the day of the incidents, also called Alberg on June 10 to ask what happened and see if she was okay. Id. at 82. Barry asked whether anyone had offered to terminate Richardson. Id. When Alberg responded no, Barry stated that it was "harassment 101." Id. Barry asked whether Alberg would be willing to come in the following week to train another employee, but Alberg declined. Id. Barry asked whether Alberg would return to work if Richardson was fired, and Alberg said she would. Id. at 82-83.

The day after Alberg left, Foss contacted an attorney about
how to handle the situation.  Doc. no. 18-3 at 26-27.  The
following week, Foss decided to terminate Richardson.  Id. at
27.  When Richardson returned from vacation, Andonian informed
him that he was being let go due to his actions.  Doc. no. 18-4
at 18, 20.  Alberg timely filed a charge of discrimination with
the New Hampshire Commission for Human Rights and the Equal
Employment Opportunity Commission.  Doc. no. 1 ¶ 5.  Only then
did she learn that Richardson had been fired.  Doc. no. 19 at
83.

### III. <u>DISCUSSION</u>

Alberg contends that Foss Motors violated Title VII of the
Civil Rights Act[4] (Count I) and the New Hampshire Law Against
Discrimination[5] (Count II) by subjecting her to a hostile work
environment.  Foss Motors moves for summary judgment on both
counts, raising three alternative arguments.  First, Foss Motors
contends that the record fails to show sufficiently severe and
pervasive harassment for Alberg's claims to go to a jury.  Next,
Foss Motors argues that the record demonstrates as a matter of
law that it implemented prompt and appropriate action in
response to any harassment.  Finally, Foss Motors argues that

---

[4] 42 U.S.C. § 2000e

[5] N.H. Rev. Stat. Ann. § 354-A:7.

there is insufficient evidence to support Alberg's assertion
that she was constructively discharged, and that the court
should limit her recovery accordingly.[6]  Alberg counters that
material disputes in the record preclude summary judgment on any
aspect of her claims.

The court considers each of Foss Motors' arguments in turn.
In doing so, the court assumes (as do the parties in their
papers) that both claims may be analyzed together under the
federal standard.  See Rolfs v. Home Depot U.S.A., Inc., 971 F.
Supp. 2d 197, 208 (D.N.H. 2013) (citations omitted) ("Because
the New Hampshire Supreme Court relies on Title VII cases to
analyze claims under [§] 354-A, the court will address Rolfs'
state and federal claims together using the Title VII standard."
(brackets and internal question marks omitted)); Madeja v. MPB
Corp., 149 N.H. 371, 379 (2003) (relying on federal precedent to
construe a claim under § 354-A).

## A.   Hostile Work Environment

"To succeed with a hostile work environment claim, a
plaintiff must show harassment sufficiently severe or pervasive

---

[6] Alberg does not bring a separate claim for constructive
discharge, but does allege that the hostile work environment to
which she was subjected "result[ed] in her constructive
termination."  Doc. no. 1 ¶ 51.  At the hearing, Foss Motors
clarified that it did not seek to have Alberg's claims dismissed
for lack of evidence of constructive discharge, but did ask that
her recovery be limited.

so as to alter the conditions of her employment and create an
abusive work environment." Maldonado-Catala v. Municipality of
Naranjito, 876 F.3d 1, 10 (1st Cir. 2017) (citations, brackets,
and internal quotation marks omitted).  "The challenged conduct
must be both objectively and subjectively offensive, such that a
reasonable person would find it hostile or abusive and the
plaintiff did in fact perceive it to be so." Id. (same
omissions).  When analyzing a hostile work environment claim, "a
court must mull the totality of the circumstances, including
factors such as the frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating,
or a mere offensive utterance; and whether it unreasonably
interfered with an employee's work performance." Id. (same
omissions).  In essence, a court must "distinguish [] between
the ordinary, if occasionally unpleasant, vicissitudes of the
workplace and actual harassment." Rivera-Rivera v. Medina &
Medina, Inc., 898 F.3d 77, 91 (1st Cir. 2018) (same omissions).
"Subject to some policing at the outer bounds, it is for the
jury to weigh [the relevant] factors and decide whether the
harassment was of a kind or to a degree that a reasonable person
would have felt that it affected the conditions of her
employment." Id. (same omissions).

      The court has little trouble concluding that a jury must
decide whether Alberg faced harassment so severe or pervasive

that it violated Title VII and § 354-A.  Alberg testified at her deposition that Richardson twice slapped her on the butt, the second time so hard it stung.  She testified that she reported both incidents to Andonian, but that each time Richardson was allowed to return to work.  She further testified that in little more than eight months working for Foss Motors, her coworkers subjected her to numerous comments that, when viewed in her favor, were at least inappropriate and at times sexually explicit.  These included Richardson telling her that he wanted to "throw [her] up on his desk" and Wayne offering to give her "some semen in [her] mouth."  She testified that she raised these comments at least once with Andonian and multiple times with Barry, at one point offering to quit.  When considering this evidence in its totality, a reasonable jury could conclude both that Alberg found the conduct at issue to be subjectively hostile or abusive and that it was objectively reasonable for her to feel that way.  Summary judgment is therefore not appropriate.

Foss Motors resists this conclusion by painting the comments as irrelevant to the court's analysis.  This is so, according to Foss Motors, because Alberg did not find the comments subjectively offensive and because the comments were too sporadic to amount to actionable harassment.  The former argument is inconsistent with the record: while Alberg indicated

during her deposition that she tolerated some of the comments,
she also testified that she reported certain comments to Barry
and Andonian, questioned whether she should have to work in an
environment where such comments were made, and one time offered
to quit due to one of the comments.  From this testimony, a jury
could find that Alberg subjectively believed the comments were
offensive.  And while "offhand" comments alone are not enough to
support a hostile work environment claim, see Flood v. Bank of
Am. Corp., 780 F.3d 1, 12 (1st Cir. 2015), the record here is
not so limited.  As discussed, there is evidence in this case
that at least two of the comments were sexually explicit and,
more importantly, that Richardson twice slapped Alberg's butt.
Such evidence pushes this case from one not involving actionable
harassment as a matter of law to one a jury must decide.  See
Rivera-Rivera, 898 F.3d at 93,

      Foss Motors disputes this last point, arguing that the
conduct at issue here is less severe than conduct courts have
previously found insufficient to support hostile work
environment claims.  Foss Motors cites five cases to support
this contention, but only two are binding on this court:
Chamberlin v. 101 Realty, Inc., 915 F.2d 777 (1st Cir. 1990),
and Morgan v. Massachusetts General Hospital, 901 F.2d 186 (1st
Cir. 1990).  But even assuming these decades-old decisions
reflect the modern state of Title VII jurisprudence in this

                              14

Circuit, neither requires an entry of summary judgment for Foss
Motors.  Chamberlin is readily distinguishable because it did
not involve the sort of sexually explicit comments alleged in
this case and because the only physical contact at issue there
was the defendant's president twice taking the plaintiff's hand
without permission.  915 F.2d at 780.  Likewise, the three
incidents of harassment alleged in Morgan — that the plaintiff's
coworker stood behind the plaintiff when he mopped, causing the
plaintiff to bump into the coworker; that the coworker stood
next to plaintiff in the restroom and "peeped" at the
plaintiff's "privates"; and that the coworker "pull[ed] on" the
plaintiff while trying to get the plaintiff to dance at a
Christmas party, see 901 F.2d at 188-89, 192-93 — bear little
resemblance to the circumstances here.  Without belaboring the
point, nothing in Chamberlin or Morgan persuades the court that
Foss Motors is entitled to judgment on this issue as a matter of
law.

**B.   Employer Liability**

Because Alberg contends that she was harassed by coworkers,
not supervisors, she must make an additional showing for
liability to extend to Foss Motors.  Namely, she must
demonstrate Foss Motors "knew or should have known of the
charged sexual harassment and failed to implement prompt and
appropriate action."  Forrest v. Brinker Int'l Payroll Co., LP,

511 F.3d 225, 230 (1st Cir. 2007) (citations and internal
quotation marks omitted).  Foss Motors does not meaningfully
dispute that it knew that Richardson slapped Alberg's butt on
two separate occasions.  And while Foss Motors contends that
Alberg never informed it of her coworkers' comments, Alberg
testified that she reported at least some of those comments to
Andonian and Barry.  The court therefore focuses its analysis on
whether Foss Motors' response was prompt and appropriate.  In
doing so, the court bears in mind that this determination "often
requires the sort of case-by-case, fact-intensive analysis best
left to a jury," id. at 232, and that summary judgment is only
appropriate "when the undisputed facts show that a reasonable
jury could not help but conclude that the employer's response
was both timely and appropriate," Wilson v. Moulison N. Corp.,
639 F.3d 1, 8 (1st Cir. 2011) (citation omitted).

A jury considering the present record could reasonably
conclude that Foss Motors failed to promptly and appropriately
respond to Alberg's reports of harassment.  Preliminarily,
Alberg testified during her deposition that Andonian and Barry
both downplayed Richardson and Wayne's comments, and there is no
indication that anyone at Foss Motors ever addressed those
comments with Richardson or Wayne.  Far more important, however,
is Foss Motors' response when informed that Richardson had
slapped Alberg's butt.  On this count, there is no dispute that

Foss and Andonian at most reprimanded Richardson and told him that they would take the matter up once Richardson returned from vacation.  There is similarly no dispute that Foss and Andonian allowed Richardson to return to work and to take his scheduled vacation, and Foss testified that he did not decide to terminate Richardson until sometime the following week.  In contrast, Alberg testified that when she questioned whether she could continue to work at Foss Motors under the circumstances, Andonian suggested that she "take the day to think about it." Construing this evidence in the light most favorable to Alberg, the court cannot conclude that Foss Motors' response was prompt and appropriate as a matter of law.

This conclusion stands regardless of the version of events the court accepts.  As noted above, the record is unclear as to how many times Richardson met with Foss or Andonian and when those meetings occurred.  Alberg testified that Richardson met with Foss and Andonian after the first slap and with just Andonian after the second.  Andonian and Foss both testified that they only met with Richardson once, but disagreed whether that meeting occurred after the first or second slap.  There is no dispute, however, that Richardson was only disciplined once before he left on vacation.  Thus, a jury could reasonably conclude, depending on which version it believes, that Foss Motors' response was not prompt or appropriate either because

17

(1) Richardson was not disciplined at all after the first slap or (2) received no additional discipline when he slapped Alberg a second time.  Additionally, the court is unaware of any case holding that it is an appropriate *as matter of law* to allow an employee to return to work under the circumstances presented here.  Rather, this case requires the precise sort of "fact-intensive analysis best left to a jury." Forrest, 511 F.3d 225, 230.

The court reaches this conclusion cognizant that Title VII "does not invariably require termination or suspension as a response to harassment (even very serious harassment)." Wilson, 639 F.3d at 8 (citation omitted).  The court imposes no such requirement.  Indeed, Foss Motors may well be able to persuasively argue that its response in this case was timely and appropriate given the specific circumstances it faced.  All the court holds now is that a jury, not the court, must resolve this issue.

## C.  Constructive Discharge

Foss Motors argues that even if it is not entitled to summary judgment on the merits, the court should still conclude that Foss Motors did not constructively discharge Alberg and should limit her recovery accordingly.  A party alleging constructive discharge "must show that (1) a reasonable person in her position would have felt compelled to resign and (2) she

actually resigned." Cherkaoui v. City of Quincy, 877 F.3d 14,
29 (1st Cir. 2017) (brackets, internal quotation marks, and
citations omitted).[7]  When assessing this issue, a court "must
gauge whether the working conditions imposed by the employer had
become so onerous, abusive, or unpleasant that a reasonable
person in the employee's position would have felt compelled to
resign." Id. (citation omitted).  This test "is one of
objective reasonableness." Id. at 30 (citation omitted).

Because there is no dispute Alberg resigned on June 9, the
sole question is whether a reasonable person in her position
would have felt compelled to do so.  There is evidence in this
case that: (1) when meeting with Alberg after the first slap,
Andonian and Foss both commented on how much money or business
Richardson brought in; (2) Foss suggested during that meeting
that he would allow Richardson to take his vacation; (3) Foss
ultimately decided to speak with Richardson and "go from there";
(4) Richardson was allowed to return to work after both slaps;
(5) no one ever informed Alberg of the discipline Richardson
received; and (6) after allowing Richardson to return to work a

---

[7] Because Foss Motors' constructive-discharge arguments
focus on the calculation of damages rather than an underlying
claim, they would arguably have been more appropriately raised
in a motion in limine or some other pretrial motion.  The court
nonetheless addresses this issue now, as both parties briefed it
and presented argument at the hearing.  In doing so, the court
applies the standard used by courts assessing constructive
discharge as an independent cause of action.

second time, Andonian suggested that Alberg "take the day and think about it" when she questioned whether Foss Motors was a place she could continue to work.  There is also evidence that Andonian and Barry downplayed Richardson and Wayne's comments, that neither Richardson nor Wayne was ever disciplined for those comments, and that the comments continued up until the day Alberg resigned.  A jury presented with this evidence could conclude that it was objectively reasonable for Alberg to believe that Richardson would not face meaningful reprisal for his conduct and that resignation was the only way to avoid future harassment.

Foss Motors makes three arguments as to why it is entitled to summary judgment despite this evidence.  First, Foss Motors contends that Alberg unreasonably failed to return to work or respond to Foss's voicemail and email.  But as Foss Motors itself acknowledges, the court's analysis focuses on a plaintiff's circumstances at the time of her resignation, not what happened after the fact.  See doc. no. 18-1 at 13.  Whatever relevance these post-resignation facts might have to other issues in this case (such as mitigation of damages), they do not bear on whether a reasonable person in Alberg's position would have felt compelled to resign when she did.

Foss Motors also argues that it was unreasonable for Alberg to resign without knowing what discipline Richardson had

received.  This argument similarly overstates the scope of the court's analysis.  While the test is an objective one, there is no requirement that the evidence be viewed from the perspective of an omniscient third party.  Rather, the question is whether a reasonable person *in the plaintiff's position* would have felt that she had no choice but to resign.  See Cherkaoui v. City of Quincy, 877 F.3d at 29.  A reasonable jury could answer this question in the affirmative.

Finally, Foss Motors contends that Alberg unreasonably insisted that Richardson be summarily fired.  This misconstrues Alberg's constructive-discharge argument.  Alberg does not argue that she was constructively discharged because Foss Motors did not impose discipline with which she agreed.  Cf. Wilson, 639 F.3d at 9 ("[T]he discipline imposed need not be such as will satisfy the complainant.").  She instead contends that at the time of her resignation, it was objectively reasonable for her to conclude that Foss Motors had not and would not address Richardson's conduct in a way that would protect her from future harassment.  When construed in her favor, the record supports this conclusion.

## IV.  <u>CONCLUSION</u>

In sum, genuine disputes of material fact preclude the court from entering summary judgment in Foss Motors' favor on

any aspect of Alberg's claims.  Foss Motors' motion for summary

judgment (doc. no. 18) is accordingly denied.

     SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

November 27, 2018

cc:  H. Jonathan Meyer, Esq.
     Daniel P. Schwarz, Esq.
     K. Joshua Scott, Esq